## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
      )
      Plaintiff,      )
      v.      )  Criminal Action
      )  No. 05-03094-01-CR-S-RED
WILLIAM DOUGLAS MONTGOMERY,      )
      )
      Defendant.      )

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed Motions to Suppress Evidence, in which he asserts that evidence seized as a result of searches of his residence should be suppressed. The United States filed its responses. The matter was set for an evidentiary hearing, which was held before the undersigned on July 19, 2006. The defendant was present with counsel, Donald Cooley, and the United States was represented by Richard Monroe, Assistant United States Attorney.

It is defendant's contention that there was not probable cause to support the issuance of a search warrant on March 1, 2005, for his residence. He also asserts that there was not probable cause to support the issuance of a March 17, 2005, search warrant for his residence.

March 1, 2005 Search Warrant

The government first called Scott Richardson, a Missouri State Highway Patrol Trooper. He testified that he was contacted by a Mr. Lawson, who claimed that defendant had taken a vehicle from his residence without his permission. Mr. Lawson described the vehicle, which was a Jeep Cherokee, had proof of ownership, and knew where it was located. He took the officer to

1

defendant's residence in Mountain Grove, Missouri. They attempted to contact the residents when they got there. Officer Bledsoe of the Mountain Grove Police Department was with them. They saw the Jeep, verified the VIN number, and then left the area. Officer Bledsoe stayed in the area to conduct surveillance. Trooper Richardson went with Mr. Lawson to the police department to make a stolen vehicle report. While they were there, Officer Bledsoe called and said he saw defendant make several trips to the Jeep, saw him drive it into the barn, and saw defendant start to leave the residence in a Dodge Durango. Trooper Richardson asked Officer Bledsoe to stop the vehicle because he believed defendant had a stolen vehicle. It took less than ten minutes for him to get back to the area. When he returned, he saw defendant and a female, Christi Gabel, outside the Durango. Officer Bledsoe had not conducted a search at that point. The officer advised Trooper Richardson that he believed he had seen defendant hand Ms. Gable an object. Trooper Richardson placed defendant under arrest for tampering with a vehicle, and read him his <u>Miranda</u> rights. Defendant agreed to answer questions. The officer asked defendant about Mr. Lawson's Jeep. Defendant stated that he had been gone all day and had not seen the jeep, which the officer knew to be false, given Officer Bledsoe's observations. Defendant was then transported to the Mountain Grove Police Department and booked. Officer Bledsoe and Trooper Richardson searched the vehicle and Ms. Gabel, and found a burnt end of a marijuana cigarette on her person. After she was taken to the police department and searched by a female, additional drugs and syringes were found on her person. When Trooper Richardson interviewed Ms. Gabel at a later date, she advised him that defendant had handed her a bag containing marijuana and cocaine after they had been stopped by Officer Bledsoe, and prior to his arrival. Trooper Richardson communicated this information to Officer Bledsoe, for him to apply for a search warrant, which was obtained. When that search

2

warrant was executed, drugs and drug paraphernalia were found, including a box of syringes, which were the same lot number as those found on Ms. Gabel's person. Subsequently, he found out that defendant had purchased these syringes. He also found an automatic pistol during the search, and also saw long guns, shotguns, and rifles, which he did not seize.

On cross examination, the officer testified that Mr. Lawson had told him he had purchased the Jeep from defendant. The officer admitted that he was told that there was a dispute over the vehicle, and he had some general understanding that defendant believed Mr. Lawson owed him money and was holding the vehicle as collateral. The officer's probable cause statement indicated that he told Mr. Lawson the only way for him to retrieve the vehicle was for him to report it stolen. After being told that, Mr. Lawson agreed to make the report. At the time Trooper Richardson instructed Officer Bledsoe to stop defendant, he knew that he was not in the alleged stolen vehicle. When the vehicle was stopped, the officers searched defendant's vehicle, and nothing was seized out of it. He also searched defendant's person, and nothing was found. All that was retrieved in the nature of contraband at the location was the burnt end of a marijuana cigarette off Ms. Gabel's person. At the jail, other items were seized from her. On March 3, Trooper Richardson talked to Ms. Gabel and got additional information from her regarding the source of the contraband being defendant. He admitted that he did not have this information at the time the search warrant was sought, nor did he give it to Officer Bledsoe. At the time the application for the search warrant was made, Trooper Richardson admitted that what was known was that defendant was in possession of a vehicle whose ownership was under dispute; they searched him and found nothing; they searched his car and found nothing; and they searched his passenger, who had the burnt end of the marijuana cigarette. Additionally, the officer stated that they knew about the additional drugs found on her,

and the fact that she left the residence with defendant.

On redirect, the officer testified that Mr. Lawson had the title to the Jeep. There was nothing in any records that indicated there was a lien on the vehicle.

The next witness for the government was Officer Dan Bledsoe, a Mountain Grove Police Officer. He was the affiant for the search warrant for defendant's home on March 1, 2005. On that day, he accompanied Trooper Richardson and Mr. Lawson to defendant's home where they could not get anyone to come to the door. After the other two left, he remained behind and continued to observe defendant's residence. Around 1:00 p.m., he saw defendant get into the Jeep, which Mr. Lawson claimed was his, and pull it into a horse barn, after which he shut the barn door. He then saw defendant make several trips back and forth to a Durango, parked in his driveway. He was taking items from the vehicle to the house and vice versa. Defendant loaded suitcases into the rear of the vehicle. The officer also saw him conceal something underneath the vehicle. As he went back and forth, defendant looked as if he were worried about being watched, and was squatting or bent over as he ran, appearing to try to stay concealed. Officer Bledsoe also saw a female come out of the residence, whom he later identified as Christi Gabel. As soon as she got in the vehicle, she put her seat down, as if she was trying to hide. After that, defendant ran back to the Durango and drove off. During this time, Officer Bledsoe was on the phone with Trooper Richardson, who told him to stop the vehicle and hold it for him until he could come to the scene. He did so, and advised defendant that he had stopped the vehicle on behalf of a state trooper. Defendant asked to leave numerous times, which he was not allowed to do. Officer Bledsoe observed defendant hand something to Ms. Gabel, and it looked like she was trying to hide something or put it in her pocket. A marijuana roach cigarette was found on Ms. Gabel. A subsequent search at the jail of Ms. Gabel

resulted in the seizure of various illegal drugs and paraphernalia. Officer Bledsoe then applied for a search warrant. He believed, at the time, that there would be further contraband found at defendant's house, given that they had been seen leaving that residence earlier that day in a furtive manner.

On cross examination, the officer stated that he knew about the dispute regarding the vehicle. He admitted that the vehicle defendant drove off in was not the Jeep. He also acknowledged that the manner in which Ms. Gabel put the seat down was within the parameters of the normal usage of the seat. Officer Bledsoe acknowledged that he stopped the vehicle because Trooper Richardson asked him to. The officer admitted that defendant stated that he was going to check on his horses. He also acknowledged that he did not put anything in the affidavit about defendant giving anything to Ms. Gabel, nor did he indicate in the affidavit that he saw her attempting to hide anything in the vehicle. He just saw defendant lean towards Ms. Gabel in the vehicle. Officer Bledsoe admitted that there was no information in the affidavit regarding anything being found in the vehicle or on defendant's person. He was not there for the vehicular search nor when defendant was searched. When he went to the house to execute the search warrant, he saw long guns and rifles, which were not taken because he did not have a search warrant for them. The officer testified that he took a weapon out of a pickup truck on the property, but did not otherwise find anything in that vehicle.

It is defendant's contention that there was no information in the March 1, 2005 affidavit that any controlled substances or paraphernalia were at defendant's residence or on his property. He contends that this lack of probable cause invalidates the search of defendant's residence and the search of a Black Dodge Pickup, and mandates suppression of all items seized in these locations. It is his contention that the affidavit stated that the Jeep Cherokee was being reported stolen, and

5

omitted the information that it was the collateral securing a loan by defendant and that the payments were in default, thereby allowing repossession by defendant.

Initially, the Court finds that the stop of defendant's vehicle was legal, given that the officers were investigation a report of a stolen vehicle, which had been seen in defendant's possession. Regardless of whether Mr. Lawson and defendant were involved in a dispute about whether payments were in arrears, it is abundantly clear that defendant had not pursued proper legal channels to resolve the issue. Additionally, Officer Bledsoe, in stopping the vehicle, acted at the direction of Trooper Richardson of the Missouri Highway Patrol, who had probable cause to believe that defendant had committed a felony by tampering with or stealing a motor vehicle.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655,

Case 6:05-cr-03094-RED   Document 54   Filed 08/11/06   Page 6 of 13

657 (8th Cir. 1999).

Having fully reviewed the record, the evidence adduced at the hearing, and applicable case law, the Court finds that the affidavit was adequate to support a determination of probable cause for the March 1st search warrant, despite defendant's assertions. The affidavit in support of the search warrant provided information regarding the investigation of a possible stolen vehicle, which was based on the personal knowledge of the affiant, Officer Bledsoe, as well as some information provided to him by Officer Richardson, who was also involved in the investigation. Based on their investigation of the complaint from a private citizen with legal ownership of the vehicle, they were able to locate it at defendant's residence, and confirm that it was the vehicle in question. In the process of their investigation, defendant was observed driving the reported stolen vehicle into his barn. He was also observed running back and forth to a Dodge Durango, where he appeared to be loading and unloading items, and either retrieving or concealing something from underneath the vehicle. It appeared that defendant was making furtive movements in an effort not to be seen. He was also seen apparently handing something to a passenger in the vehicle, Christi Gabel. She had been observed exiting defendant's residence, and when she got into the Durango, she immediately laid her seat down, as if to be hiding. They then drove away. After the vehicle was stopped a short distance away, defendant was advised of why he was stopped, and read his rights. He was thereafter arrested for tampering with a motor vehicle. When Ms. Gabel was searched at the scene, a burnt marijuana cigarette was found on her person. After her arrest for possession of marijuana, and a subsequent search where marijuana, cocaine, and drug paraphernalia were found, Ms. Gabel stated that defendant had handed her the bags of marijuana and cocaine between the time of being contacted by Officer Bledsoe and Officer Richardson's arrival at the scene.

Regarding the sufficiency of the affidavit, with the exception of Officer Bledsoe's observation that defendant appeared to hand something to Ms. Gabel, and her statement that he had handed her the bag containing the drugs, the affidavit otherwise summarizes the facts as known to the officers involved in this investigation. Based on the fact that the officers found drugs and contraband on Ms. Gabel, who had just left defendant's residence and was in his vehicle with him, and based on an apparent attempt to conceal the Jeep, as well as the suspicious behavior on the part of both occupants of the vehicle, the Court finds that there was probable cause to believe that illegal drugs and contraband were present at the residence. After a full review of the record and the testimony adduced at the hearing, the Court is satisfied that there were sufficient facts set forth to establish probable cause for the issuance of the search warrant to search defendant's residence. Accordingly, the Court finds that it must be recommended that defendant's motion to suppress evidence obtained from the search warrant issued on March 1, 2005, be denied.

<u>March 17, 2005 Search Warrant</u>

The government called Officer Scott Britton, a detective with the Greene County Sheriff's Department, who is currently assigned to COMET. On March 17, 2005, he received a telephone call from Special Agent Angie Kaighin regarding defendant. In response, he went to a location in Springfield, Missouri. Along with Detective Weatherford, he located a black Dodge truck with Montana license plates. They followed the vehicle, and observed it committing a traffic offense. Specifically, Officer Bledsoe testified that the vehicle had problems staying within the driving lane, and swerved over into the eastbound lane. On this basis, they made a traffic stop. Defendant was driving, and his passenger was Christi Gabel. Other officers came to assist them, including Detectives Jim Arnot and Jim Stanley. Detective Arnot spoke to defendant, and Officer Britton

spoke to Ms. Gabel. Detective Arnot indicated that defendant had consented to a search of his person and the vehicle for contraband. Ms. Gabel also consented. In the course of the search, Officer Britton located a plastic baggie of methamphetamine and one of cocaine in a wallet inside the vehicle. Ms. Gabel also possessed some drug paraphernalia and methamphetamine. Officer Britton arrested defendant, read him his rights, and then spoke to him, after he agreed to talk. Defendant confessed to being a methamphetamine user, stated that he had had methamphetamine in his possession for about two weeks, and that it was only for personal use and not redistribution. He stated he had used methamphetamine the night before. In the search of the vehicle, the officer found a box of ammunition behind the driver's seat. Shane Spratt, an officer with the South Central Drug Task Force, was advised of the discovery of the drugs. He spoke to Ms. Gabel via cell phone.

On cross examination, the officer stated that Agent Kaighin asked him to assist in the investigation by following the vehicle. Officer Britton testified that he intended to stop it after he observed a traffic violation. He could not say how far it was until he observed defendant swerving between lanes, crossing the line. They searched the vehicle and the wallet, seizing the bags that were in the wallet, the ammunition, and miscellaneous pills.

Deputy Sheriff Jim Arnot also testified for the government. During the stop in question, he spoke to defendant, who consented to a search of the vehicle and his personal effects. The officer testified that he did not threaten him in any way to obtain his consent.

The next witness for the government was Shane Spratt, who was a Mountain Grove Police Officer at the time in question, assigned to the South Central Drug Task Force. He made an application for a search warrant of defendant's residence on March 17, 2005. He was aware of the search warrant and search on March 1, 2005. From his prior experience, he knew who Christi Gabel

was, knew her voice, and was familiar with her role in the drug world in Wright County. On March 17, he received information about defendant having been stopped in Greene County, and that drugs had been seized. He had several phone calls with the officers at the scene and with Special Agent Kaighin. He spoke with Christi Gabel at the scene via cell phone. She told him that defendant was taking her to her house in Houston, and that he was going home. Ms. Gabel said there was a possibility of more drugs at defendant's residence, although he did not put this in his affidavit. In the affidavit, he included the information about the stop, the seizure of methamphetamine, and the information that defendant was going home to Mountain Grove after he dropped off Ms. Gabel. He also included the information that defendant was a user of methamphetamine, and that he had purchased it from someone in Montana.

On cross examination, the officer testified that the affidavit only indicates that the drugs were obtained as a result of the traffic stop, without more information. Otherwise, it just stated that Ms. Gabel said defendant was returning to his house. Officer Spratt stated that Ms. Gabel just said that there might be some drugs there, but he did not investigate this further or do anything to verify this. His affidavit stated that he was told by another officer that defendant was arrested on March 1 for distribution for methamphetamine. He just took the person's word for this, and did not investigate further. He also included information regarding methamphetamine being found at the residence, but he did not have or include information that it was methamphetamine residue found in a mobile home on the property.

Defendant contends that the supporting affidavit for the March 17th search warrant was based on statements relating to an illegal search conducted on March 1st. He further asserts that the traffic stop was pretextual, and that the alleged consent was nothing more than acquiescence to a claim of

Case 6:05-cr-03094-RED   Document 54   Filed 08/11/06   Page 10 of 13

lawful authority and tainted by the unlawful stop and detention. He concludes that the affidavit does not provide sufficient evidence to establish probable cause that illegal drugs and other related contraband were located at his residence.

Initially, based on the ruling herein regarding the March 1st search warrant, defendant's contention that the warrant obtained on March 17th was based on information relating to an illegal search is without merit. Further, the testimony at the hearing established that the officers made a legal traffic stop, and there was no evidence to substantiate defendant's claim that the stop was pretextual. The law is clear that a law enforcement officer's intent is irrelevant and does not invalidate a traffic stop. Whren v. United States, 517 U.S. 806 (1996). Further, any traffic violation, however minor, provides probable cause for arrest. United States v. Bloomfield, 40 F.3d 910 (8th Cir. 1994), cert. denied, 514 U.S. 1113 (1995). Based on the credible testimony adduced at the hearing, defendant committed a traffic violation and the subsequent stop was legal.

Additionally, there was no evidence introduced at the hearing to suggest that defendant's consent was obtained through coercion. Under the totality of the circumstances, the Court finds that, based on the officers' credible testimony, as well as the fact of defendant's past experience with law enforcement and his attempt to minimize his involvement by claiming to be a mere user of methamphetamine, there is no basis to conclude that his consent was anything other than voluntary.

Regarding the affidavit in support of the March 17 warrant, the affidavit included the fact that there had been a search of defendant's residence in which drugs were found on March 1st, pursuant to a search warrant. It also contained the facts of the traffic stop on March 17th, that drugs were seized, defendant's admission that he was a methamphetamine user, that he had used the drug the night before, and that he bought the methamphetamine from a person in Montana. The affidavit

Case 6:05-cr-03094-RED   Document 54   Filed 08/11/06   Page 11 of 13

also contained Ms. Gabel's statement that defendant was going to his residence after he took her home. It did incorrectly state that defendant had previously been arrested for possession of illegal drugs and for distribution of a controlled substance on March 1st. Officer Spratt testified that he obtained this information from another officer, and did not realize it was incorrect. Even if this information were omitted from the affidavit, the Court finds that sufficient probable cause remains for the issuance of the search warrant in this case. In addition to the search on March 1st, in which drugs were found, the affidavit contained information regarding the stop of the vehicle where methamphetamine and cocaine were discovered. There was also defendant's admission of being a drug user, who had used the night before and had purchased methamphetamine from someone out-of-state. The Court believes that, based on a common-sense reading of the affidavit, there was a sufficient basis to establish probable cause for the issuance of the search warrant. Even assuming, however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in <u>United States v. Leon</u>, 468 897, 922-23 (1984) would apply. It is clear that the officers relied in good faith on what they believed to be a valid search warrant from a neutral magistrate. Therefore, it will be recommended that the motion to suppress evidence obtained from the March 17th search warrant be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motions to Suppress Evidence from the March 1, 2005, and March 17, 2005, search warrants be denied.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

12

Date:_____8/11/06_____